IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LAURIE JEAN JOHNSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:17-CV-0416-DGK-SSA |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Laurie Johnson's applications for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of degenerative disk disease of the cervical spine and obesity, but she retained the residual functional capacity ("RFC") to perform work as a retail price marker, small parts assembler, and collator operator.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her applications on May 12, 2014, alleging a disability onset date of July 22, 2011. The Commissioner denied the applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on January 26, 2016, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on April 18, 2017, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Substantial evidence is less than a preponderance, but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or

medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Plaintiff argues the ALJ erred at Step Four by: (1) failing to include restrictions related to Plaintiff's obesity in the RFC; (2) failing to include limitations for Plaintiff's mental impairments in the RFC; (3) failing to assess Plaintiff's RFC on a function-by-function basis; and (4) relying on his own medical opinion in crafting the RFC. Plaintiff also contends the ALJ erred at Step Five because she cannot perform any of the jobs identified by the vocational expert ("VE").

These arguments are without merit.

### I. The ALJ properly determined and described the obesity related restrictions on Plaintiff's RFC.

To begin, Plaintiff argues the ALJ erred by not considering the impact of obesity on her musculoskeletal and mental impairments, and also by failing to comply with Social Security Regulation ("SSR") 02-01 by not identifying which, if any, functional limitations were related to her obesity.

As a threshold matter, this argument is perplexing. The Court notes that even though Plaintiff never alleged disability on the basis of obesity, R. at 236, the ALJ nonetheless found her obesity to be a severe impairment because he found such evidence in the record, and he was doing his duty to identify all severe impairments supported by the record. R. at 17, 22 (noting Plaintiff was 5'8" tall and weighed 267 pounds, thus her body mass index was 40.6). And Plaintiff now

---

medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

3

complains that notwithstanding the fact that she failed to discuss her own obesity, the ALJ should have found more restrictions based on it.

As far as complying with the regulations, the ALJ noted that, "[o]besity can cause limitations in function, including sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balance, stooping and crouching (SSR 02-01 )," and "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." R. at 22. The ALJ also included limitations on Plaintiff's ability to move, recognizing she could only "occasionally climb ramps and stairs" and "occasionally balance, stoop, kneel, crouch, and crawl," but she could "never climb ladders, ropes, or scaffolds." Thus, the ALJ was clearly aware of, and accounted for, Plaintiff's obesity in assessing her RFC, even if he did not explain in detail how obesity related to each functional limitation. This was sufficient. *See, e.g., Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) ("We have held that when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal.").

**II.      The ALJ did not err by omitting mental restrictions from Plaintiff's RFC.**

Plaintiff also argues the ALJ erred by failing to incorporate the Psychiatric Review Technique ("PRT") analysis from Steps Two and Three into mental limitations on her RFC at Step Four. Using the PRT at Steps Two and Three, the ALJ found Plaintiff's mental limitations were "non-severe," but still caused mild restrictions on her activities of daily living and mild difficulties maintaining concentration, persistence, and pace. Plaintiff contends these findings should have resulted in mental limitations in the RFC.

This argument is unpersuasive because it ignores the distinction between the PRT and the RFC. The PRT is used at Steps Two and Three of the sequential evaluation process to determine whether a claimant's mental impairments are severe or meet a Listing. *See* 20 C.F.R. §§ 404.1520a, 416.920a. In contrast, the RFC finding is made at Step Four to determine the most the

4

claimant can do despite her functional limitations.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945.  The RFC "considers only functional limitations and restrictions that result from an individual's impairment(s);" it is *not* a listing of the underlying impairments and their related symptoms.  SSR 96-8p.  In fact, SSR 96-8p specifically distinguishes between PRT and RFC findings, providing that the limitations identified in the PRT "are not an RFC assessment but are used to rate the severity of mental impairment(s) at Steps Two and Three of the sequential evaluation process."  *Id*.  The PRT findings are intended not to assess mental functional limitations, but instead to assist the ALJ in determining whether a claimant has a severe or listed mental impairment.  A mild restriction in daily living activities and mild limitation in the area of maintaining concentration, persistence, or pace do not require a corresponding RFC limitation as Plaintiff suggests.  Because the ALJ found Plaintiff did not suffer from a severe mental impairment, *i.e.,* that her mental symptoms did not cause more than a minimal limitation in her ability to do basic work activities, he did not need to find any mental limitations on the RFC were necessary.  *See, e.g., Browning v. Colvin,* No. 13-00266-CV-W-REL-SS, 2014 WL 4829534, at *37 (W.D. Mo. Sept. 29, 2014) ( "While it is true that the ALJ did not include his finding of plaintiff's mild difficulties in concentration, persistence, and pace in the assessment, there was no requirement that he do so.  Mild limitations in any of the four domains of mental functioning are non-severe (20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1)) and therefore by definition cause no work-related limitations of function (20 C.F.R §§ 404.1521(a); 416.921(a)).").  Hence, there was no error here.

**III. The ALJ did not err by failing to assess Plaintiff's RFC on a function-by-function basis.**

Next, Plaintiff contends the ALJ violated SSR 96-8 by not identifying Plaintiff's limitations on a function by function basis *before* describing her RFC in terms of a "light" exertional level.

This claim is without merit. As a threshold matter, the ALJ did not simply limit Plaintiff to "light work," but instead included various additional and specific non-exertional, postural, and environmental limitations as part of the RFC. R. at 20. Further, the ALJ did not err because his RFC finding preceded his discussion of the evidence supporting that finding. *See, e.g., Seitz v. Colvin*, No. 5:15-CV-06151-NKL, 2016 WL 3920463, at *7 (W.D. Mo. July 18, 2016) (rejecting claimant's argument "that by articulating this limit in exertional terms—'light work'—without providing a function-by-function assessment of his ability to sit, stand, walk, push, and pull, the ALJ failed to comply with the social security regulations" and SSR 96-8p); *Althaus-Rosiere v. Astrue*, No. 10-5076-CV-SW-RED, 2012 WL 287314, at *4 (W.D. Mo. Jan. 31, 2012) (finding no error where ALJ expressed RFC in terms of "light work," followed by a discussion supporting his determination).

The cases cited by Plaintiff are distinguishable. For example, in *Hayes v. Astrue*, the court held the ALJ erred because she made no explicit findings as to the claimant's functional limitations. No. 2:11-CV-04132, 2012 WL 393406, at *5 (W.D. Mo. Feb. 6, 2012). By contrast, here the ALJ made numerous findings as to Plaintiff's specific functional limitations. R. at 20 ("She can frequently handle and finger with the left upper extremity . . . [S]he can tolerate occasional exposure to extreme cold, excessive vibration, and hazards – such as moving machinery and unprotected heights.")

**IV.     The RFC is supported by substantial evidence.**

Plaintiff also argues the ALJ erred by not obtaining some medical evidence addressing her functional restrictions.  Plaintiff contends that the ALJ rejected the opinions of her primary care physician, Dr. David Pulliam, D.O., and an examining pain management specialist, Dr. Steven Hendler, M.D., so there is no substantial evidence on the record which can support the RFC determination.

This argument is not supported either by the facts or the law.  As a factual matter, while the ALJ discounted certain portions of these doctors' opinions completely, such as Dr. Pulliam's assertion that Plaintiff "has been 'totally disabled' since July 2011," R. at 23 (ALJ quoting Dr. Pulliam), he did give some weight to some of their opinions.  For example, he embraced Dr. Hendler's observation that while there was some evidence Plaintiff suffered from myofascial pain, her symptomatology was "'markedly out of proportion to the objective findings,'" which suggested she was magnifying her symptoms.  R. at 22 (ALJ quoting Dr. Hendler).  In fact, the ALJ's opinion demonstrates he parsed the doctors' reports carefully and thoughtfully sifted through their opinions.

Plaintiff is also incorrect on the law.  Plaintiff's argument is based on a misunderstood, but frequently argued, theory concerning what it means for the RFC determination to be based on "some medical evidence."  Plaintiff's argument is grounded in caselaw from the early 2000s.  *See*, *e.g.*, *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) ("Some medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace."); *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("[S]ome medical evidence must support the determination of the claimant's [residual functional capacity]").  The Eighth Circuit subsequently clarified that this language does *not* mean the ALJ is required to base the RFC determination on a medical opinion.

7

Case 4:17-cv-00416-DGK     Document 14     Filed 05/23/18     Page 7 of 9

*Lockwood v. Colvin*, 627 F. App'x 575, 577 (8th Cir. 2015).  It observed the argument regarding "some medical evidence" was an "incomplete statement of the RFC inquiry established by a host of our prior Social Security disability cases." *Id.*  It noted the ALJ is "not limited to considering medical evidence exclusively," because "[e]ven though the RFC draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Id.*

In sum, the record shows the RFC determination is supported by substantial evidence.

## V.     Substantial evidence supports the finding that Plaintiff can perform other work.

Finally, Plaintiff makes two arguments that the ALJ erred at Step Five.   Plaintiff's first argument—that the hypothetical question the ALJ posed the VE was flawed because it was based upon an incorrect RFC determination—is unavailing because it rests on a faulty premise, namely that the hypothetical question was flawed.  As discussed above, the ALJ did not err in formulating Plaintiff's RFC.

Plaintiff's second argument is that she cannot perform the jobs the VE identified—retail price marker, small parts assembler, and collator operator—because they require more than occasional reaching in all directions with her left arm, which is foreclosed by the RFC determination and the Dictionary of Occupational Titles ("DOT").

Although Plaintiff may not agree with the VE's opinion, the VE's testimony is substantial evidence nonetheless.  The ALJ asked the VE a properly phrased hypothetical question which incorporated the eventual RFC finding. R. at 60.  The VE answered Plaintiff could perform jobs such as retail price marker, small parts assembler, and collator operator. R. at 61-63.  While Plaintiff is correct that the DOT describes these jobs as requiring frequent reaching, the VE also explained that her opinion was supplemented by her work experience, particularly "the limitations involving [Plaintiff's] reaching, handling, fingering" with her left arm, and that her opinion was still consistent with the DOT. R. at 64-65.  Consequently, the VE's testimony constituted

substantial evidence. *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (holding that when the ALJ poses a hypothetical that accurately reflects the claimant's RFC, questions the VE about any apparent inconsistencies with the relevant DOT job descriptions, and the VE testifies that her opinion is partly based upon her experience, substantial evidence supports the ALJ's decision).

**Conclusion**

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   May 23, 2018                              /s/ Greg Kays
                                                                       GREG KAYS, CHIEF JUDGE
                                                                       UNITED STATES DISTRICT COURT